

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISH NETWORK L.L.C., et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>SONICVIEW USA, INC., et al.,<br><br>Defendants. | CASE NO. 09-CV-1553 L (NLS)<br><br>ORDER (1) GRANTING PLAINTIFFS' *EX PARTE* APPLICATION FOR LEAVE TO EXTEND PAGE LIMITATION; (2) DENYING PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER, WRIT OF CIVIL SEIZURE/IMPOUNDMENT, AND ORDER TO SHOW CAUSE; AND (3) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR TEMPORARILY FILING CASE UNDER SEAL |

In this copyright infringement action, Plaintiffs Dish Network L.L.C., Echostar Technologies L.L.C., and Nagrastar L.L.C.'s (collectively, "Plaintiffs") filed *Ex Parte* Application for Temporary Restraining Order, Writ of Civil Seizure/Impoundment, and Order to Show Cause ("TRO and Seizure Motion") and Motion for Temporarily Filing Case Under Seal ("Motion to Seal"). Plaintiffs requested leave to file points and authorities in support of the TRO and Seizure Motion to excess of the page limit. They did not serve Defendants with the Complaint, motions or any supporting papers. The Court decides the matter on the papers submitted and without oral argument. See Civil Local Rule 7.1(d.1).

As an initial matter, the Court **GRANTS** Plaintiffs' *ex parte* application for leave to extend the page limit. Because Plaintiffs failed to establish that Defendants are likely to ignore court orders or destroy evidence if given notice of this litigation, the Court **DENIES** the TRO and Seizure Motion. Plaintiffs' Motion to Seal is **GRANTED** to the extent Plaintiffs request sealing of their confidential informants' declarations and **DENIED** in all other respects.

I. BACKGROUND

The DISH Network satellite television system provides satellite television programming to over 13 million subscribers in the Unites States. DISH Network purchases the distribution rights for copyright-protected programming from content providers. (*Duval Decl.*, ¶ 10.) The programming is transmitted through encrypted signals to multiple satellites located in geosynchronous orbit above the Earth. (*Id.*, ¶ 13.) The satellites then transmit the encrypted signals to subscribers' dish antennas that are designed to receive the encrypted programming. (*Id.*, ¶¶ 14, 16.)

After the signals reach subscribers' antennas, the encrypted signals are transmitted by wire into an EchoStar Technologies receiver, which processes and decrypts the incoming signals using data and encryption technology stored in a DISH Network Access Card loaded into the receiver. (*Duval Decl.*, ¶¶ 15, 16.) The access card communicates with the receiver to assure that only signals the subscriber is authorized to receive will be decrypted. (*Id.*, ¶ 25.)

DISH Network employs various security systems to protect its encrypted satellite signals. Recently, DISH Network implemented a new security system, "Nagra 3," to better protect its satellite signals from satellite-television pirates. (*Duval Decl.*, ¶ 44.)

Plaintiffs allege that Defendants are heavily involved in the manufacture of receivers, software and other devices used to intercept and steal DISH Network's encrypted signal. (*Gee Decl.*, ¶ 33.) Defendants allegedly distribute their pirate technology through a warehouse in Oceanside, California and storefront located in El Cajon, California, as well as through numerous websites. (*Id.*, ¶¶ 39, 42, 43.) Defendants' customers are also instructed to download pirating software from a website, www.ftalife.com. (*Id.*, ¶¶ 40–41.)

1    Suspicious that Defendants were engaged in pirating DISH Network's signal, Plaintiffs
2 conducted an undercover, in-person and online investigation of Defendants' activities. (*Gee*
3 *Decl.*, ¶ 33.) Plaintiffs contend that during the investigation, Defendant Robert Sanz, owner
4 of Defendant Sonicview, admitted to a confidential informant that Defendants were developing
5 pirating technology capable of hacking DISH Network's most recent security system, the
6 Nagra 3, and that Defendants intended to distribute hundreds of thousands of the devices. (*See*
7 █████████████████████.)
8    On July 17, 2009, Plaintiffs filed this lawsuit. The Complaint includes claims for
9 violation of the Digital Millennium Copyright Act (the "DMCA"), 17 U.S.C. §§ 1201, *et seq.*,
10 the Communications Act of 1934, 47 U.S.C. §§ 605, *et seq.*, and the Electronic
11 Communications Privacy Act, 18 U.S.C. 2511(1)(a). Along with the Complaint, Plaintiffs
12 filed the TRO and Seizure Motion seeking *ex parte* relief and Motion to Seal.
13
14   II.   **EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND WRIT OF**
15         **CIVIL SEIZURE/IMPOUNDMENT**
16         A.   **LEGAL STANDARD**
17    The Federal Rules of Civil Procedure outline the procedures a federal court must follow
18 when deciding whether to grant a temporary restraining order. See Fed.R.Civ.P. 65. The
19 standard for granting a temporary restraining order is the same for entering a preliminary
20 injunction. <u>Bronco Wine Co. v. U.S. Dep't of Treasury</u>, 997 F. Supp. 1309, 1313 (E.D. Cal.
21 1996); <u>Franklin v. Scribner</u>, Civil No. 07-0438 BTM (LSP), 2007 WL 1491100, at *3 (S.D.
22 Cal. May 21, 2007). The Ninth Circuit has prescribed the following equitable criteria for
23 determining whether to grant injunctive relief:

24    (1) the likelihood of the moving party's success on the merits; (2) the possibility
      of irreparable injury to the moving party if relief is not granted; (3) the extent to
25    which the balance of hardships favors the respective parties; and (4) in certain
      cases, whether the public interest will be advanced by granting the preliminary
26    relief. The moving party must show either (1) a combination of probable
      success on the merits and the possibility of irreparable harm, or (2) the existence
27    of serious questions going to the merits, the balance of hardships tipping sharply
28

    in its favor, and at least a fair chance of success on the merits... [T]he required degree of irreparable harm increases as the probability of success decreases.

Owner Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co., 367 F.3d 1108, 1111 (9th Cir. 2004) (quoting Miller ex. rel. N.L.R.B. v. Cal. Pac. Med. Ctr., 19 F.3d 449, 456 (9th Cir. 1994)). The temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70, 415 U.S. 423, 439 (1974); accord L.A. Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1200 (9th Cir. 1980).

    However, circumstances that justify an *ex parte* temporary restraining order are extremely limited. Reno Air Racing Assoc., Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006). Where notice could have been given to the adverse party, the moving party must demonstrate that "notice to the defendant would render fruitless the further prosecution of the action" because, for example, the adverse party is likely to destroy evidence. Id.

  **B.**  **LIKELIHOOD OF SUCCESS ON THE MERITS**

    Section 1201(a)(2) of the DMCA prohibits developing and/or distributing any technology, product or device that,

> (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title;
>
> (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title;

17 U.S.C. § 1201(a)(2).

    Here, Plaintiffs provide evidence that Defendants distribute technology and devices primarily designed to circumvent DISH Network's security devices. Further, the evidence demonstrates that Defendants' technology and devices have no other commercially significant purpose or use.

    Plaintiff NagraStar's security technician, Daniel McMullen, analyzed files available on Defendants' websites. (*McMullen Decl.*, ¶33.) Based on a process identified more fully in

1  McMullen's declaration, he determined that 137 files from the website www.ftalife.com were
2  pirate files that allowed individuals to, among other things, decrypt and view DISH Network
3  satellite television programming without authorization, and circumvent Plaintiffs'
4  technological measures intended to prevent the unauthorized access of DISH Network's
5  signals. (*Id.*, ¶ 38.) Additionally, McMullen testified that based on his review, the files "have
6  no commercially significant use." (*Id.*, ¶ 38.) Based on this testimony, Plaintiffs have
7  established a probability of prevailing on the claim under Section 1201(a)(2) of the DMCA.
8       Moreover, Section 1201(b)(1) of the DMCA prohibits distributing devices and/or
9  technologies that circumvent a technological measure that protects a right of a copyright
10 owner. 17 U.S.C. § 1201(b)(1). Because DISH Network's security measures protect copyright
11 material, Defendants' conduct in circumventing those security measures also violates
12 subsection (b)(1). Accordingly, Plaintiffs have also established a probability of prevailing on
13 their Section 1201(b)(1) claim.

14       **C.   IRREPARABLE HARM**
15       "In a copyright infringement action. . . [a] showing of a reasonable likelihood of success
16 on the merits raises a *presumption* of irreparable harm." Triad Systems Corp. V. Southeastern
17 Exp. Co., 64 F.3d 1330, 1335 (9th Cir. 1995) (citing Johnson Controls, Inc. V. Phoenix
18 Control Sys., Inc., 886 F.2d 1173, 1174 (9th Cir. 1989)); see also Apple Computer, Inc. v
19 Franklin Computer Corp., 714 F.2d 1240, 1254 (3rd Cir. 1983) ("A copyright plaintiff who
20 makes out a prima facie case of infringement is entitled to a preliminary injunction without a
21 detailed showing of irreparable harm."). As set forth above, at a minimum, Plaintiffs have
22 established a likelihood of success on both claims under the DMCA. Accordingly, the Court
23 finds that this factor favors granting the TRO.

24       **D.   BALANCE OF HARDSHIPS**
25       Plaintiffs argue that Defendants will suffer no hardship if the TRO is granted because
26 the TRO would, in essence, simply require Defendants to comply with federal and California
27 law. But the TRO Plaintiffs seek would not simply enjoin Defendants from manufacturing and
28 distributing devices or technoloy used to decrypt DISH Network's programming. Rather,

Plaintiffs seek to enjoin Defendants' manufacture and distribution of *all* satellite receivers or any other technologies related to or useful for satellite television. In essence, Plaintiffs seek to close Defendants' business, including the distribution of any equipment that is not used to pirate DISH Network's programming. Contrary to Plaintiffs' claim, the proposed injunction would cause Defendants hardship.

Nevertheless, the record before the Court demonstrates that Defendants are heavily engaged in developing and distributing piracy technology that targets DISH Network. (*See Gee Decl.*, ¶ 33.) Plaintiffs demonstrated that if the TRO is not issued, Plaintiffs will continue to suffer significant financial losses, including the loss of goodwill and damage to their reputation as a direct result of Defendants' conduct. For this reason, the Court finds that the balance of hardships tips in favor of Plaintiffs.

### E. LACK OF NOTICE TO DEFENDANTS

Plaintiffs seek a TRO and a seizure/impoundment order *ex parte*, *i.e.*, without notice to Defendants. Circumstances justifying the issuance of *ex parte* injunctive relief are extremely limited because "our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted to both sides of a dispute." McCord, 452 F.3d at 1131 (quoting Granny Goose Foods, 415 U.S. at 439). In cases such as this, where it is possible to find and serve the adverse party, courts have recognized

> a very narrow band of cases in which ex parte orders are proper because notice to the defendant would render fruitless the further prosecution of the action. [S]uch cases include situations where an alleged infringer is likely to dispose of the infringing goods before the hearing. To justify an ex parte proceeding on this latter ground, the applicant must do more than assert that the adverse party would dispose of evidence if given notice. Plaintiffs must show that defendants would have disregarded a direct court order and disposed of the goods within the time it would take for a hearing and must support such assertions by showing that the adverse party has a history of disposing of evidence or violating court orders or that persons similar to the adverse party have such a history.

McCord, 452 F.3d at 1131 (internal quotation marks, brackets, ellipsis and citations omitted).

Plaintiffs argue that *ex parte* relief is justified because Defendants will likely destroy or secrete evidence if they are given notice of this litigation. This contention is based entirely

on the declaration of Jerry Gee, Plaintiff NagraStar's Director of Field Security and Investigations. (*Gee Decl.*, ¶¶ 4, 5.)

According to Gee's declaration, Defendants use computers to conduct their piracy activities. (*Gee*, ¶ 53.) Based on his years of experience with "numerous piracy cases," as well as the fact that piracy devices are small and highly portable, Gee opines that there is a real and substantial risk that Defendants will dispose of evidence once they receive notice of the proceedings. (*Id.*, ¶¶ 54, 55.) Although he offers no specifics, Gee further alleges that he has first-hand knowledge of destruction of evidence in similar cases. (*Id.*)

In order to obtain an *ex parte* TRO or seizure/impoundment order, Plaintiffs must demonstrate that notice to Defendants would render fruitless further prosecution of the action because Defendants would likely destroy evidence. McCord, 452 F.3d at 1131. In McCord, for example, plaintiffs contended that the TRO "must issue without notice ... because of the significant risk that Defendant" might leave the area and "destroy or conceal [his] infringing merchandise once [he] receive[s] notice of the lawsuit." Id. at 1132 (brackets in original). Supporting this clam was plaintiff's counsel's declaration, which stated that "in his experience, this is a common occurrence when dealing with infringers at one time famous events such as the 'Reno Air Races' and it is well-recognized in the case law." Id. The Ninth Circuit found the declaration insufficient: "This conclusory statement from counsel hardly qualified as evidence and certainly did not link the TRO application to McCord." Id.

Here, Gee's declaration also falls short of making the requisite showing. Similar to counsel's declaration in McCord, Gee's declaration is made up of vague allegations regarding his years of experience with "numerous piracy cases," as well as generalizations regarding the propensities of satellite-television pirates. Gee offers no specific information regarding Defendants in this case that suggests that they are likely to disregard a court order, or that Defendants have a history of spoliation of evidence.

Plaintiffs' requested relief, which includes a request to enjoin Defendants' manufacture and distribution of *all* satellite receivers or any other technologies related to or useful for satellite television, is overbroad and is therefore denied. Moreover, Plaintiffs offered no

specifics suggesting that these Defendants are likely to destroy evidence despite a court order. Accordingly, they have not shown that *ex parte* relief is appropriate in this case. Plaintiffs' TRO and Seizure Motion for *ex parte* relief is therefore **DENIED**.

### III. MOTION FOR ORDER TEMPORARILY FILING CASE UNDER SEAL

Plaintiffs also filed a motion to seal the entire case file to facilitate seizure and pending service of the TRO. In addition, they requested to seal the declarations of confidential informants until the parties enter into a stipulated protective order or maintain appropriate confidentiality designations. (Mot. at 1.) Because Plaintiffs' TRO and Seizure Motion is denied, their request to temporarily seal the entire case file is **DENIED** as well. However, their motion to seal confidential informants' declarations is **GRANTED**.

Historically, courts have recognized a "general right to inspect and copy public records and documents, including judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 & n. 7 (1978). Three different standards govern motions to seal documents in judicial proceedings. First, "the narrow range of documents such as grand jury transcripts and certain warrant materials . . . traditionally have been kept secret for important policy reasons." Pintos v. Pac. Creditors Ass'n, 565 F.3d 1106, 1115 n.4 (9th Cir. 2009) (internal quotation marks, brackets, and citation omitted); Kamakana v. City and County of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006). Second, sealing a judicial record requires the requesting party to show compelling reasons which outweigh the general history of access and the public policies favoring disclosure. Pintos, 565 F.3d at 1115; Kamakana, 447 F.3d at 1178. Last, to shield "private materials unearthed during discovery" from public view, the requesting party must meet the good cause standard of Federal Rule of Civil Procedure 26(c). Pintos, 565 F.3d at 1115; Foltz v. State Farm Mut. Auto Ins. Co., 331 F.3d 1122, 1130 (9th Cir. 2003); Phillips v. General Motors Corp., 307 F.3d 1206 (9th Cir. 2002).

Based on the "strong presumption of access to judicial records," the parties requesting to seal judicial records pertaining to dispositive motions and trials bear the burden of overcoming the presumption by meeting the "compelling reasons" standard. Kamakana, 447

F.3d at 1179; Pintos, 565 F.3d at 1115. However, sealing of documents attached to non-dispositive motions is treated differently. There is "an exception to the presumption of access to judicial records for a sealed discovery document attached to a non-dispositive motion, such that the usual presumption of the public's right of access is rebutted." Kamakana, 447 F.3d at 1179 (internal quotation marks, brackets, emphases and citations omitted); see also Pintos, 565 F.3d at 1115. The party seeking to seal a document attached to a non-dispositive motion must meet the lower "good cause" standard pursuant to Rule 26(c). Foltz, 331 F.3d at 1135 (discussing Phillips); see also Kamakana, 447 F.3d at 1180; Pintos, 565 F.3d at 1115-16.

The threshold issue is whether Plaintiffs' TRO and Seizure Motion is dispositive for purposes of sealing court records. Plaintiffs provided no briefing on this point and proceeded on the assumption that the motion is non-dispositive. Aside from noting that summary judgment motions are dispositive, Pintos, 565 F.3d at 1116, Kamakana, 447 F.3d at 1179, Foltz, 331 F.3d at 1135, and that discovery sanctions motions are non-dispositive, Phillips, 307 F.3d at 1209, 1213, the distinction has not been articulated by the Ninth Circuit, see In re Nat'l Sec. Agency Telecomm. Records Litig., 2007 WL 549854 *3 (N.D. Cal. Feb. 20, 2007) (noting "absence of explicit guidance on this issue"). In deciding this issue, the court is guided by the rationale justifying the distinction. "The public policies that support the right of access to dispositive motions, and related materials, do not apply with equal force to non-dispositive materials." Kamakana, 447 F.3d at 1179 (citing Phillips, 307 F.3d at 1213). A higher standard applies to dispositive motions because "the resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the "public's understanding of the judicial process and of significant public events." Id. On the other hand, "the public has less of a need for access to court records attached only to non-dispositive motions because those documents are often unrelated, or only tangentially related, to the underlying cause of action." Id; see also Pintos, 565 F.3d at 1115-16. An order on a motion for TRO and seizure directly addresses the merits of the action and seeks injunctive relief before trial. Motions for injunctive relief are recognized as dispositive in other contexts. See 28 U.S.C. § 636(b)(1). Accordingly, Plaintiffs' TRO and Seizure Motion is dispositive for purposes of sealing court

1  records. Plaintiffs therefore must meet the "compelling reasons" standard to seal their
2  confidential informant declarations.
3    To meet the compelling reasons standard, the moving party "must overcome a strong
4  presumption of access by showing that compelling reasons supported by specific factual
5  findings outweigh the general history of access and the public policies favoring disclosure."
6  Pintos, 565 F.3d at 1116 (internal quotation marks, ellipsis, and citation omitted); Kamakana,
7  447 F.3d at 1179-80. "Under the 'compelling reasons' standard, a district court must weigh
8  relevant factors, base its decision on a compelling reason, and articulate a factual basis for its
9  ruling without relying on hypothesis or conjecture." Pintos, 565 F.3d at 1116 (internal
10 quotation marks, ellipsis, footnote, and citation omitted). "Relevant factors include the public
11 interest in understanding the judicial process and whether disclosure of the material could
12 result in improper use of the material for scandalous or libelous purposes or infringement upon
13 trade secrets." Id. at 1116 n.6 (internal quotation marks and citation omitted).
14   Plaintiffs argue that confidential informant declarations should be sealed because the
15 same informants are working on investigations regarding the same matters in other pending
16 or yet-to-be-filed cases. Revealing their identities would jeopardize the success of those
17 investigations and subject the informants to threat of physical harm. (*Gee Decl.*, ¶¶ 58-62.)
18 Accordingly, disclosure of these declarations could result in improper use both in furthering
19 Defendants' alleged piracy as well as in threatening the informants. On the other hand, several
20 other declarations and briefs related to the merits of the motion are not being sealed. These
21 documents are sufficient to put the motion and the Court's ruling in context sufficiently to
22 serve the public interest in understanding the judicial process.
23   Sealing the declarations to protect the informants' identities therefore justified by
24 compelling reasons. Furthermore, the contents of the declarations and attached exhibits are
25 sufficient to identify the informants, even if each informant's name were redacted. Sealing the
26 / / / / /
27 / / / / /
28 / / / / /

confidential informants' declarations in their entirety, including attached exhibits,[1] is therefore appropriate for the same reasons. In order to protect the informants' identities, the Court also finds compelling reasons justify sealing those portions of this order, the Motion to Seal, TRO and Seizure Motion, and memorandum of law in support of the TRO and Seizure Motion which include the names of the informants or excerpts from the informants' exhibits.

### IV. CONCLUSION AND ORDER

For the reasons stated above, **IT IS HEREBY ORDERED** as follows:

1. Plaintiffs' *Ex Parte* Application for Leave to Extend the Page Limitation is **GRANTED**.

2. Plaintiffs' *Ex Parte* Application for Temporary Restraining Order, Writ of Civil Seizure/Impoundment, and Order to Show Cause is **DENIED**.

3. Plaintiffs' Motion for Order Temporarily Filing Case Under Seal is **GRANTED IN PART AND DENIED IN PART**. The Clerk is hereby directed to file under seal (1) the unredacted version of Plaintiffs' Motion for Order Temporarily Filing Case Under Seal; (2) the unredacted version of Plaintiffs' *Ex Parte* Application for Temporary Restraining Order, Writ of Seizure/Impoundment, and Order to Show Cause; (3) the unredacted version of the Memorandum of Law in Support of Plaintiffs' *Ex Parte* Application for Temporary Restraining Order, Writ of Seizure/Impoundment, and Order to Show Cause; (4) the unredacted version of this order; and (5) the following declarations filed in support of Plaintiffs' *Ex Parte* Application for Temporary Restraining Order, Writ of Civil Seizure/Impoundment, Order to Show Cause and Motion to Seal: ██████████ ██████████ ██████████. The Court will file in the record

---

[1] The Court notes, however, that the declarations and exhibits are not entirely relevant to this case but appear to have been prepared to serve in more than one litigation. This does not mitigate the need to seal the documents. However, to the extent Plaintiffs intend to file any more confidential informant declarations in the future, they are instructed to carefully consider whether the information is relevant to the matter at hand. The information which is not relevant but which Plaintiffs consider confidential can be redacted, and the document filed in redacted form without the need to move for filing under seal.

available to the public redacted versions of this order, Plaintiffs' Motion for Order Temporarily Filing Case Under Seal, Plaintiffs' *Ex Parte* Application for Temporary Restraining Order, Writ of Seizure/Impoundment, and Order to Show Cause, and the memorandum of law in support of Plaintiffs' *ex parte* application.

**IT IS SO ORDERED.**

DATED: July 23, 2009

M. James Lorenz
United States District Court Judge