UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISH NETWORK, LLC., et al., | Civil No. 09-1553-L(WVG) |
| Plaintiffs, | ORDER COMPELLING PRODUCTION OF DEFENDANTS' BUSINESS RECORDS |
| v. | |
| SONIC VIEW USA, INC., et al., | |
| Defendants. | |

On March 4, 2011, the Court compelled Defendants to produce several categories of financial documents.[1] This order was appealed and upheld by the District Judge assigned to the case. Defendants produced some responsive documents and claimed that they did not have any further responsive documents. However, the production was incomplete. Therefore, Plaintiffs subpoenaed Defendants' banks for complete responsive information. Defendants moved to quash the subpoenas.

---

[1]/ These included documents sufficient to show Defendants' net worth and profits, income statements, operating statements, profit and loss statements, balance sheets and tax returns.

On August 23, 2011, the Court granted in part and denied in part Defendants' Motion to Quash. Specifically, the Court ordered that the subpoenaed documents be produced to Defendants' counsel for redaction of personal expenses such as medical bills and household expenses. The Court further ordered that, within ten days, the documents be produced to Plaintiffs along with a privilege log. This order was also appealed and upheld by the District Judge assigned to the case. Defendants failed to comply with the order to produce in a timely fashion.

On November 21, 2011, the Court ordered Plaintiffs' counsel to submit a list of Defendants' previously-subpoenaed business financial records indicating the account numbers of the records and the status of their production. The Court also ordered Defendants' counsel to submit letter briefs addressing the discoverability of Defendants' business financial records. On November 23, 2011, the Court received Plaintiff's counsel's list ("Exhibit A list"). On December 5, 2011, the Court received the letter briefs from Defendants' counsel.

On December 19, 2011, the Court ordered Defendants to produce the records identified in the Exhibit A list on or before January 20, 2012. Defendants were permitted to redact personal expenses and Cyndi Phu's separate property interests.[2] On January 19, 2012, one day before the deadline, Defendants produced some but not all of

---

[2] Cyndi Phu, a non-party to this lawsuit, is the wife of Defendant Alan Phu.

these records.[3] Therefore, Defendants have again failed to substantively comply with the Court's order.

The Court, having reviewed the pertinent letters and briefs, and GOOD CAUSE APPEARING, HEREBY ORDERS:

A. On or before <u>April 24, 2012</u>, Defendants shall produce statements for all Sonicview and HT Solutions bank accounts, including but not limited to, HT Solutions accounts at Wells Fargo Bank ending in 2087 and 3798, from January 1, 2006 to present.

Defendants contend that discovery closed on September 30, 2011 and that Plaintiffs are consequently time-barred from raising a discovery dispute. However, the Court has ordered discovery since that date due to Defendants' repeated failure to comply with the Court's orders (specifically those orders dated March 4, 2011; August 23, 2011; and December 19, 2011.) The Court has no intention of rewarding Defendants for their delays and willful failure to comply with court orders by cutting off Plaintiffs' rightful pursuit of discovery.

Defendants further contend the Sonicview and HT Solutions bank accounts were not compelled by the December 19, 2011 Order. However, the December 19, 2011 order was directly related to the previous orders which did specify those accounts. Even if production of the Sonicview and HT Solutions bank accounts were not compelled by the December 19, 2011 order, their production was nonetheless compelled by other previous orders.

B. On or before <u>April 24, 2012</u>, Defendants shall produce records for the following additional accounts ("New Accounts"):

---

[3]/ Defendants' March 2 letter to the Court claims that they "produced all of the records listed in Exhibit A" but contradict themselves four sentences later, stating that the documents were produced "[w]ith three exceptions..."

1      1. Bank of America and Wells Fargo accounts with numbers ending in 4697, 1348, 6060, 2592, 6421, 3859, 1647, 6265, 7359, and 9990, which received transfers from Roberto Sanz's accounts, from January 1, 2006 to present.

2. Bank of America accounts with numbers ending in 5815, 1199, 4649, 6320, 7448, 8548, and 3388 which received transfers from Duane Bernard's accounts, from January 1, 2006 to present.

3. Scotttrade and USAA Federal Savings accounts which received transfers totalling $200,000 and $18,500, respectively, from Duane Bernard's accounts, from January 1, 2006 to present.

Defendants object to production of these accounts on the basis that they were not included on the Exhibit A list. However, the Exhibit A list includes categories of accounts whose numbers were unknown. When discovery produces new information that identifies previously unknown accounts to which large transfers have been made, the interests of justice require production of the newly discovered accounts. Here, Plaintiffs' diligence yielded identification of new and relevant accounts for which timely requests for production were made. They must now be produced.

Defendants further contend that they "have no present obligation to explain or clarify any particular entry in any of the bank statements which were produced in compliance" with the December 19, 2011 order. However, given the timing, number, and size of the transfers made from the produced accounts to the New Accounts, the transfers may have been fraudulent. The burden rests with Defendants to explain why statements for the New Accounts should not be produced. Defendants have failed to do so.

C. On or before <u>April 24, 2012</u>, Defendants shall produce all financial records pertaining to Wells Fargo account numbers ending in 7683, 5347, and 6221, from January 1, 2006 to present. Furthermore, Defendants shall produce statements for the same period pertaining to any other accounts that received more than $5,000.00 in a single transaction from the Wells Fargo accounts ending in 7683, 5347, 6221.

Defendants withheld production of information pertaining to these accounts, claiming that they are the sole and separate property of Cyndi Phu, a non-party to this lawsuit. However, Plaintiffs note that Defendant Alan Phu transferred $223,834.37 to one of these accounts (numbered 7683) through his Satellite Dish Expert account. On this basis, Plaintiffs contend that the Uniform Fraudulent Transfer Act ("UFTA") applies. <u>See</u> Cal. Civ. Code §§ 3439.04-3439.05. UFTA reflects, in part, California's "general policy of protecting creditors from fraudulent transfer, including transfers between spouses."[4] <u>Mejia v. Reed</u> 31 Cal. 4th 657, 668 (2003). Defendants have not explained this transfer or identified any reasonably equivalent value received in exchange for it. Therefore, statements from this account are necessary to determine whether the transfer must be set aside as fraudulent under UFTA.[5] <u>See</u> <u>Keeley v. Anderson</u>, 14 Cal. App. 2d 467, 470 (1936) (to determine whether transfer from husband to wife was made to defraud creditors, evidence regarding all circumstances must be examined);

---

[4]/ This policy has been recognized for over a century. <u>See, e.g.</u>, <u>Threlkel v. Scott</u>, 4 Cal. Unrep. 346, 348 (1893) (a fraudulent conveyance from husband to wife is void as against his creditors, irrespective of his intention to commit a fraud.)

[5]/ The Court's March 4, 2011, order makes clear its intention not to conduct separate discovery on the issue of damages, should liability be proven.

see also Filip v. Bucurenciu, 129 Cal. App. 4th 825, 834 (2005) ("Whether a conveyance was made with fraudulent intent is a question of fact, and proof often consists of inferences from the circumstances surrounding the transfer.") Thus, where a defendant and his non-party spouse commingle assets into a single account, and the transfer appears fraudulent, the recipient account must be considered tainted for discovery purposes. Accordingly, in this case, financial records pertaining to the recipient accounts are relevant and discoverable.

Defendants' contention that the receiving account is solely held in a non-party's name due to a transmutation agreement is simply immaterial. First, although "California permits postnuptial agreements to transmute community property into separate property, [such] transmutation can [still] amount to a fraudulent transfer." In re Kimmel, 367 B.R. 174, 177 (N.D. Cal. 2007). Second, it is not beyond comprehension that an individual may attempt to conceal ill-gotten gains by transferring them to an account held solely by a trusted non-party rather than one bearing his or her own name. UFTA's prohibition on fraudulent transfers does not contain an exception allowing fraudulent transfers between spouses. Therefore, the California policy allowing the creditors of one spouse to enforce UFTA against transfers between spouses applies even when the recipient now holds the subject property solely. See, e.g., Mejia v. Reed, 31 Cal. 4th 657, 664, 668-69 (2003).

D. On or before April 24, 2012 Plaintiffs shall file with the Court a brief that states the amount and legal basis for their requests for expenses and monetary sanctions under Rules 11 or 37.

The brief shall also contain documents that support the amount of monetary sanctions requested.

E. On several prior occasions, similar production of records has been ordered by the Court. On those occasions, the Court permitted Defendants to redact personal expenses and solely-held property. Since Defendants have abused this opportunity by "redacting" entire accounts without good cause, the Court will not extend this privilege to Defendants again. All statements ordered produced by this order shall be produced in their entirety. Any privacy interests will be protected by the Protective Order already in place in this case.

IT IS SO ORDERED.

DATED: April 10, 2012

Hon. William V. Gallo
U.S. Magistrate Judge